| FROM: | | **INVOICE** | |
|---|---|---|---|
| Appraisal Concepts | | **INVOICE NUMBER** | |
| 32 Pemberton Avenue | | 0021096 | |
| Jamestown, RI 02835 | | **DATE** | |
| | | 6/5/2009 | |
| Telephone Number: 401-423-3502    Fax Number: 401-423-3491 | | | |

**REFERENCE**

| | |
|---|---|
| Internal Order #: | 0021096 |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | 0021096 |
| Other File # on form: | |
| Federal Tax ID: | 51-0517045 |
| Employer ID: | |

**TO:**
Attorney Jacquard
23 Reservoir Avenue
Providence, RI, 02907

Telephone Number:        Fax Number:
Alternate Number:         E-Mail: KDGDmay2000@aol.com

## DESCRIPTION

| | |
|---|---|
| Lender: Attorney Jacquard | Client: Attorney Jacquard |
| Purchaser/Borrower: Dixon | |
| Property Address: 50 Church Street | |
| City: West Warwick | |
| County: Kent | State: RI        Zip: 02893-4033 |
| Legal Description: Deed Book 843, Page 292 | |

| FEES | AMOUNT |
|---|---|
| Single Unit Appraisal | 300.00 |
| | |
| **SUBTOTAL** | 300.00 |

| PAYMENTS | | AMOUNT |
|---|---|---|
| Check #:    Date:    Description: Paid in Full/Cash | | 300.00 |
| Check #:    Date:    Description: | | |
| Check #:    Date:    Description: | | |
| **SUBTOTAL** | | 300.00 |
| Thank You for the Appraisal Assignment! | **TOTAL DUE** | $        0 |

| Borrower/Client | Dixon | | | File No. 0021096 | |
|---|---|---|---|---|---|
| Property Address | 50 Church Street | | | | |
| City | West Warwick | County | Kent | State RI | Zip Code 02893-4033 |
| Lender | Attorney Jacquard | | | | |

## TABLE OF CONTENTS



Invoice ................................................................................................................. 1
Table of Contents ............................................................................................... 2
Summary of Salient Features .............................................................................. 3
URAR ................................................................................................................... 4
Subject Photos ................................................................................................... 10
Subject Photos ................................................................................................... 11
Subject Photos Interior ....................................................................................... 12
Subject Photos Interior ....................................................................................... 13
Comparable Photos 1-3 ....................................................................................... 14
Statement of Limiting Conditions ....................................................................... 15
USPAP Identification ........................................................................................... 17
License ................................................................................................................ 18
E & O Insurance .................................................................................................. 19
Location Map ....................................................................................................... 20
Building Sketch (Page - 1) ................................................................................... 21

## SUMMARY OF SALIENT FEATURES

| SUBJECT INFORMATION | | |
|---|---|---|
| | Subject Address | 50 Church Street |
| | Legal Description | Deed Book 843, Page 292 |
| | City | West Warwick |
| | County | Kent |
| | State | RI |
| | Zip Code | 02893-4033 |
| | Census Tract | 0201.02 |
| | Map Reference | 39300 |

| SALES PRICE | | |
|---|---|---|
| | Sale Price | $ |
| | Date of Sale | |

| CLIENT | | |
|---|---|---|
| | Borrower/Client | Dixon |
| | Lender | Attorney Jacquard |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| | Size (Square Feet) | 2,092 |
| | Price per Square Foot | $ |
| | Location | Avg. Busy Road |
| | Age | 1935 Redone |
| | Condition | Good |
| | Total Rooms | 10 |
| | Bedrooms | 6 |
| | Baths | 3 |

| APPRAISER | | |
|---|---|---|
| | Appraiser | James A. Thompson (RI) |
| | Date of Appraised Value | 6/04/2009 |

| VALUE | | |
|---|---|---|
| | Final Estimate of Value | $ 200,000 |

Appraisal Concepts, Inc. (401) 421-1500
File No. 0021096  Page #4

**Summary Appraisal Report**

## Uniform Residential Appraisal Report
File # 0021096

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address | 50 Church Street | City | West Warwick | State | RI | Zip Code | 02893-4033 |
|---|---|---|---|---|---|---|---|

| Borrower Dixon | Owner of Public Record Dixon | County Kent |
|---|---|---|

Legal Description  Deed Book 843, Page 292

| Assessor's Parcel # Map 13, Lot 79 | Tax Year 2008 | R.E. Taxes $ 4,112.14 |
|---|---|---|

| Neighborhood Name Church Street | Map Reference 39300 | Census Tract 0201.02 |
|---|---|---|

| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ N/A | ☐ PUD | HOA $ N/A | ☐ per year ☐ per month |
|---|---|---|---|---|

| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | |
|---|---|

| Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Market Value | |
|---|---|

Lender/Client  Attorney Jacquard  Address  23 Reservoir Avenue, Providence, RI, 02907

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).  MLS

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  N/A

Contract Price $  Date of Contract  Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)  Tax Assessor

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  ☐ Yes ☒ No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | | Property Values ☐ Increasing ☐ Stable ☒ Declining | | | PRICE | AGE | One-Unit | 90 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☐ In Balance ☒ Over Supply | | | $ (000) | (yrs) | 2-4 Unit | 10 % |
| Growth ☐ Rapid ☐ Stable ☒ Slow | | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 150 Low | 10 | Multi-Family | % |
| Neighborhood Boundaries  Easterly: Route 2; Westerly: Main Street; Northerly: Route 117; Southerly: | | | | | | 350 High | 200 | Commercial | % |
| Route 3. | | | | | | 200 Pred. | 60 | Other | % |

Neighborhood Description  he subject dwelling is located east of Main Street and is south of Route 117. There is an entrance ramp to Route 95 located within two miles, which provides access to all points. Neighborhood dwellings provide average maintenance levels. Employment stability is considered to be average. Church Street is a busy road, this does have an adverse effect on the marketability, estimated at $10,000.

Market Conditions (including support for the above conclusions)  Average marketing time for sold properties is between three and six months. Market values have declined since their high point of December 2005. Per Case- Shiller price index- for Boston area- as of 4/28/2009, for the period February 2008 thru February 2009, price depreciation is 7.18% per year, .6% per month.

| Dimensions See Deed | Area 16,117 SF | Shape Rectangular | View GOod |
|---|---|---|---|

| Specific Zoning Classification R8 | Zoning Description Residential Single Unit |
|---|---|

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt paved | ☒ | |
| Gas | ☐ | ☒ Propane | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone C  FEMA Map # 4400070002B  FEMA Map Date 4/15/1986

Are the utilities and off-site improvements typical for the market area?  ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  ☐ Yes ☒ No  If Yes, describe

No adverse conditions noted. The site has good lawn cover, mature foundation and area plantings and trees, and has an asphalt paved driveway on the left and on the right. There are stone and brick retaining walls on the site.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☐ Crawl Space | | Foundation Walls | Conc/Stone/Avg. | Floors | Carpet/Vinyl/Good |
| # of Stories 1.7 | | ☒ Full Basement ☐ Partial Basement | | Exterior Walls | Vinyl/Good | Walls | Plaster/Good |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area 1,450 sq.ft. | | Roof Surface | Asphalt Shingle/Avg. | Trim/Finish | Wood/Good |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish 0 % | | Gutters & Downspouts | Aluminum/Good | Bath Floor | Ceramic/Good |
| Design (Style) Colonial Cape | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | Vinyl/DH/Good | Bath Wainscot Fiberglass/Good |
| Year Built 1935 | | Evidence of ☐ Infestation | | Storm Sash/Insulated | Thermo/Good | Car Storage | ☐ None |
| Effective Age (Yrs) 10 | | ☐ Dampness ☐ Settlement | | Screens | Yes/Good | ☒ Driveway # of Cars 8 |
| Attic | ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities | ☐ Woodstove(s) # | Driveway Surface Asph Paved |
| ☐ Drop Stair ☐ Stairs | | ☒ Other Steam Fuel Oil | | ☐ Fireplace(s) # | ☐ Fence | Garage # of Cars |
| ☐ Floor ☒ Scuttle | | Cooling ☐ Central Air Conditioning | | ☐ Patio/Deck | ☐ Porch | Carport # of Cars |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☒ Pool Above | ☐ Other | ☐ Att. ☐ Det. ☐ Built-In |

Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)

| Finished area above grade contains: | 10 Rooms | 6 Bedrooms | 3 Bath(s) | 2,092 Square Feet of Gross Living Area Above Grade |
|---|---|---|---|---|

Additional features (special energy efficient items, etc.).  Open porch at front. Above ground pool and detached storage shed at rear. Fence at rear.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  No repairs or renovation required. The subject dwelling is a six bedroom, three bathroom cape. Recent upgrades include vinyl siding, vinyl windows, and the kitchen.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe
There was no seepage noted from the oil tank located in the basement. Oil tanks are common to the area and have no adverse effect on marketability.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  ☒ Yes ☐ No  If No, describe

## Uniform Residential Appraisal Report

File # 0021096

| There are | 10 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 200,000 to $ 250,000. |
| There are | 5 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 200,000 to $ 250,000. |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 50 Church Street | 25 Kent Street | | 35 Woodside Avenue | | 6 Whispering Pines Court | |
| | West Warwick, RI 02893-4033 | West Warwick, RI 02892 | | West Warwick, RI 02892 | | West Warwick, RI 02892 | |
| Proximity to Subject | | 0.46 miles NW | | 1.79 miles N | | 1.82 miles SW | |
| Sale Price | $ | | $ 186,000 | | $ 210,000 | | $ 214,900 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 123.34 sq.ft. | | $ 135.75 sq.ft. | | $ 138.91 sq.ft. | |
| Data Source(s) | | MLS 853677 | | MLS 930904 | | MLS 847144 | |
| Verification Source(s) | | DOM 59 | | DOM 22 | | DOM 80 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | None Known | | Closing Costs | | None Known | |
| Concessions | | | | Paid | -5,000 | | |
| Date of Sale/Time | | 12/19/08 | -6,100 | 3/16/09 | -3,100 | 2/06/09 | -1,400 |
| Location | Avg. Busy Road | Superior | -10,000 | Superior | -10,000 | Superior | -10,000 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 16,117 SF | 15,244 SF | | 8,712 SF | +5,000 | 10,103 SF | +4,000 |
| View | Good | Good | | Good | | Good | |
| Design (Style) | Colonial Cape | Bungalow | | Colonial | | Gambrel Col. | |
| Quality of Construction | Good | Good | | Good | | Good | |
| Actual Age | 1935 Redone | 1917/Redone | | 1900/Redone | | 1991 | |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total \| Bdrms. \| Baths | Total \| Bdrms. \| Baths | | Total \| Bdrms. \| Baths | | Total \| Bdrms. \| Baths | |
| Room Count | 10 \| 6 \| 3 | 8 \| 4 \| 2 | +2,000 | 8 \| 4 \| 2 | +2,000 | 7 \| 4 \| 1.5 | +3,000 |
| Gross Living Area | 2,092 sq.ft. | 1,508 sq.ft. | +11,880 | 1,547 sq.ft. | +11,100 | 1,536 sq.ft. | +11,320 |
| Basement & Finished | Full | Full | | Full | | Full l | |
| Rooms Below Grade | Unfinished | Unfinished | | Unfinished | | Finished Room | -2,000 |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | Good | Good | | Good | | Good | |
| Energy Efficient Items | Good | Good | | Good | | Good | |
| Garage/Carport | No Garage | No Garage | | 2-C-D Garage | -4,000 | 2-C-D Garage | -4,000 |
| Porch/Patio/Deck | Porch | Porch | | Porch | | Deck | +1,000 |
| Extras | No Fireplace | No Fireplace | | No Fireplace | | No Fireplace | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -2,220 | ☐ + ☒ - | $ -4,000 | ☒ + ☐ - | $ 1,920 |
| Adjusted Sale Price | | Net Adj. 1.2 % | | Net Adj. 1.9 % | | Net Adj. 0.9 % | |
| of Comparables | | Gross Adj. 16.1 % | $ 183,780 | Gross Adj. 16.1 % | $ 206,000 | Gross Adj. 17.1 % | $ 216,820 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   MLS-Tax Assessor
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   MLS - Tax Assessor
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | N/A | N/A | N/A | N/A |
| Price of Prior Sale/Transfer | N/A | N/A | N/A | N/A |
| Data Source(s) | MLS Tax Assessor | MLS Tax Assessor | MLS Tax Assessor | MLS Tax Assessor |
| Effective Date of Data Source(s) | Inspection Date | Inspection Date | Inspection Date | Inspection Date |

Analysis of prior sale or transfer history of the subject property and comparable sales    The subject property has not sold or transferred within the last three years. The sales comparables have not been previously sold or transferred within the last one year.

Summary of Sales Comparison Approach    Most emphasis is placed on the sales comparison approach, with support provided by the cost approach. While considered, the income approach is deemed to be not particularly relevant for existing single unit properties. The subjects compatibility to the subject neighborhood is considered to be good. GLA is adjusted at $20 per square foot. Price depreciation is estimated at -.6% per month. Bathrooms are adjusted at $2,000 each. The location of all the comps are deemed to be superior. The garages and lot sizes of comps 2 and 3 are deemed to be inferior. It is acknowledged that comps 2 and 3 are located over one mile away.

Indicated Value by Sales Comparison Approach $  200,000

Indicated Value by: Sales Comparison Approach $  200,000    Cost Approach (if developed) $  205,811    Income Approach (if developed) $  N/A

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or  ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $  200,000 , as of  6/04/2009 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005    Page 2 of 6    Fannie Mae Form 1004 March 2005

## Uniform Residential Appraisal Report

File # 0021096

**ADDITIONAL COMMENTS**

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   **Comparable sales**

| COST APPROACH | | | |
|---|---|---|---|
| ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE ........................................ =$ | | 40,000 |
| Source of cost data  Local Contractors | DWELLING  2,092  Sq.Ft. @ $  65.00 .......... =$ | | 135,980 |
| Quality rating from cost service        Effective date of cost data | Basement  1,450  Sq.Ft. @ $  20.00 .......... =$ | | 29,000 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Porch ............................................................ =$ | | 4,000 |
| | Garage/Carport  Sq.Ft. @ $ ....................... =$ | | |
| | Total Estimate of Cost-New .......................... =$ | | 168,980 |
| | Less | Physical | Functional | External |
| | Depreciation  28,169 | | | =$| 28,169 |
| | Depreciated Cost of Improvements .................. =$ | | 140,811 |
| | "As-is" Value of Site Improvements ................ =$ | | 25,000 |
| Estimated Remaining Economic Life (HUD and VA only)        50 Years | INDICATED VALUE BY COST APPROACH ............ =$ | | 205,811 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| INCOME | | | |
|---|---|---|---|
| Estimated Monthly Market Rent $           X Gross Rent Multiplier           = $  N/A | Indicated Value by Income Approach |
| Summary of Income Approach (including support for market rent and GRM) | |

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No   Unit type(s)  ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| PUD INFORMATION | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |
| Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion. | | |
| Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source | | |
| Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion. | | |

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

## Uniform Residential Appraisal Report

File # 0021096

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions or limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 0021096, Page #8

# Uniform Residential Appraisal Report

File # 0021096

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other public and private data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report
File # 0021096

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER   James A. Thompson | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _James L. Thompson_ | Signature _____ |
| Name  James A. Thompson (RI) | Name _____ |
| Company Name _____ | Company Name _____ |
| Company Address  Appraisal Concepts, Inc., 32 Pemberton | Company Address _____ |
| Avenue, Jamestown, RI 02835 | |
| Telephone Number  (401) 423-3502 | Telephone Number _____ |
| Email Address  James@appraisalconceptsinc.com | Email Address _____ |
| Date of Signature and Report  June 05, 2009 | Date of Signature _____ |
| Effective Date of Appraisal  6/04/2009 | State Certification # _____ |
| State Certification #  A00123R | or State License # _____ |
| or State License # _____ | State _____ |
| or Other (describe) _____  State # _____ | Expiration Date of Certification or License _____ |
| State  RI | |
| Expiration Date of Certification or License   12/31/2009 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 50 Church Street | Date of Inspection _____ |
| West Warwick, RI 02893-4033 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $   200,000 | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name _____ | COMPARABLE SALES |
| Company Name  Attorney Jacquard | |
| Company Address  23 Reservoir Avenue, Providence, RI,  02907 | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address _____ | Date of Inspection _____ |

### Subject Photo Page

| Borrower/Client | Dixon |  |  |  |  |
|---|---|---|---|---|---|
| Property Address | 50 Church Street |  |  |  |  |
| City | West Warwick | County | Kent | State | RI | Zip Code | 02893-4033 |
| Lender | Attorney Jacquard |  |  |  |  |



**Subject Front**

| 50 Church Street | |
|---|---|
| Sales Price | |
| Gross Living Area | 2,092 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 3 |
| Location | Avg. Busy Road |
| View | Good |
| Site | 16,117 SF |
| Quality | Good |
| Age | 1935 Redone |



**Subject Front**



**Subject Rear**

## Subject Photo Page

| Borrower/Client | Dixon | | | | |
|---|---|---|---|---|---|
| Property Address | 50 Church Street | | | | |
| City | West Warwick | County | Kent | State | RI | Zip Code | 02893-4033 |
| Lender | Attorney Jacquard | | | | |



### Subject Side

50 Church Street

| | |
|---|---|
| Sales Price | |
| Gross Living Area | 2,092 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 3 |
| Location | Avg. Busy Road |
| View | Good |
| Site | 16,117 SF |
| Quality | Good |
| Age | 1935 Redone |



### Subject Above Ground Pool



### Subject Street

## Subject Interior Photo Page

| Borrower/Client | Dixon | | | | |
|---|---|---|---|---|---|
| Property Address | 50 Church Street | | | | |
| City | West Warwick | County | Kent | State | RI | Zip Code | 02893-4033 |
| Lender | Attorney Jacquard | | | | |



**Subject Interior**

50 Church Street
Sales Price
Gross Living Area   2,092
Total Rooms   10
Total Bedrooms   6
Total Bathrooms   3
Location   Avg. Busy Road
View   Good
Site   16,117 SF
Quality   Good
Age   1935 Redone



**Subject Interior**



**Subject Interior**

# Subject Interior Photo Page

| | | | |
|---|---|---|---|
| Borrower/Client | Dixon | | |
| Property Address | 50 Church Street | | |
| City | West Warwick | County Kent | State RI Zip Code 02893-4033 |
| Lender | Attorney Jacquard | | |

**Subject Interior**

| | |
|---|---|
| 50 Church Street | |
| Sales Price | |
| Gross Living Area | 2,092 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 3 |
| Location | Avg. Busy Road |
| View | Good |
| Site | 16,117 SF |
| Quality | Good |
| Age | 1935 Redone |

**Subject Interior**

**Comparable Photo Page**

| | |
|---|---|
| Borrower/Client | Dixon |
| Property Address | 50 Church Street |
| City | West Warwick | County | Kent | State | RI | Zip Code | 02893-4033 |
| Lender | Attorney Jacquard |



### Comparable 1
25 Kent Street
| | |
|---|---|
| Prox. to Subject | 0.46 miles NW |
| Sales Price | 186,000 |
| Gross Living Area | 1,508 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | Superior |
| View | Good |
| Site | 15,244 SF |
| Quality | Good |
| Age | 1917/Redone |



### Comparable 2
35 Woodside Avenue
| | |
|---|---|
| Prox. to Subject | 1.79 miles N |
| Sales Price | 210,000 |
| Gross Living Area | 1,547 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | Superior |
| View | Good |
| Site | 8,712 SF |
| Quality | Good |
| Age | 1900/Redone |



### Comparable 3
6 Whispering Pines Court
| | |
|---|---|
| Prox. to Subject | 1.82 miles SW |
| Sales Price | 214,900 |
| Gross Living Area | 1,536 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 1.5 |
| Location | Superior |
| View | Good |
| Site | 10,103 SF |
| Quality | Good |
| Age | 1991 |

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

> *Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**  50 Church Street, West Warwick, RI 02893-4033

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: _James F. Thompson_ | Signature: _____ |
| Name: _James A. Thompson (RI)_ | Name: _____ |
| Date Signed: _June 05, 2009_ | Date Signed: _____ |
| State Certification #: _A00123R_ | State Certification #: _____ |
| or State License #: _____ | or State License #: _____ |
| State: _RI_ | State: _____ |
| Expiration Date of Certification or License: _12/31/2009_ | Expiration Date of Certification or License: _____ |

☐ Did    ☐ Did Not Inspect Property

| Borrower/Client | Dixon | | | | File No. 0021096 |
|---|---|---|---|---|---|
| Property Address | 50 Church Street | | | | |
| City | West Warwick | County Kent | | State RI | Zip Code 02893-4033 |
| Lender | Attorney Jacquard | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Appraisal Report is **one** of the following types:

☐ **Self Contained** (A written report prepared under Standards Rule 2-2(a), pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☒ **Summary** (A written report prepared under Standards Rule 2-2(b), pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ **Restricted Use** (A written report prepared under Standards Rule 2-2(c), pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
— the statements of fact contained in this report are true and correct.
— the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
— I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.
— I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
— my engagement in this assignment was not contingent upon developing or reporting predetermined results.
— my compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
— my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
— I have (or have not) made a personal inspection of the property that is the subject of this report. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraised property.)
— no one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)

### Comments on Appraisal and Report Identification
Note any USPAP related issues requiring disclosure and any state mandated requirements:

**APPRAISER:**

Signature: _James A. Thompson_
Name: James A. Thompson (RI)
Date Signed: June 05, 2009
State Certification #: A00123R
or State License #: _____
State: RI
Expiration Date of Certification or License: 12/31/2009

Effective Date of Appraisal: 6/04/2009

**SUPERVISORY APPRAISER (only if required):**

Signature: _____
Name: _____
Date Signed: _____
State Certification #: _____
or State License #: _____
State: _____
Expiration Date of Certification or License: _____
Supervisory Appraiser Inspection of Subject Property:
☐ Did Not   ☐ Exterior-only from street   ☐ Interior and Exterior



State of Rhode Island and Providence Plantations
Department of Business Regulation
Division of Commercial Licensing and Regulation

Real Estate Appraisers Section
233 Richmond St., Suite 230
Providence, RI 02903-4230

## Certified Residential Appraiser



GENERAL STAR NATIONAL INSURANCE COMPANY
Financial Centre
P O Box 10360
Stamford, Connecticut 06904-2360

## REAL ESTATE APPRAISERS ERRORS & OMISSIONS INSURANCE POLICY

### DECLARATIONS PAGE

This is a claims made and reported policy. Please read this policy and all endorsements and attachments carefully.

1   **NAMED INSURED**          James A. Thompson
    **STREET ADDRESS**         37 Pemberton Ave
                               Bancetown, RI 02835

2   **POLICY PERIOD**

3   **LIMIT OF LIABILITY**
        Each Claim            $ 1,000,000
        Aggregate             $ 2,000,000
    **Claim Expenses**
        Each Claim            $ 1,000,000
        Aggregate             $ 1,000,000

4   **DEDUCTIBLE**

5   **RETROACTIVE DATE**

6   **ANNUAL PREMIUM**        $

7   **ENDORSEMENTS**

8   **MANAGING AGENT**

Producer Code

**Location Map**

| Borrower/Client | Dixon | | | | |
|---|---|---|---|---|---|
| Property Address | 50 Church Street | | | | |
| City | West Warwick | County | Kent | State | RI | Zip Code | 02893-4033 |
| Lender | Attorney Jacquard | | | | |



| Borrower/Client | Dixon | | | | |
|---|---|---|---|---|---|
| Property Address | 50 Church Street | | | | |
| City | West Warwick | County Kent | | State RI | Zip Code 02893-4033 |
| Lender | Attorney Jacquard | | | | |



**Comments:**

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 1480.0 | 1480.0 |
| GLA2 | Second Floor | 612.0 | 612.0 |
| P/P | Open Porch | 180.0 | 180.0 |
| | | | |
| | Net LIVABLE Area | (Rounded) | 2092 |

| LIVING AREA BREAKDOWN | |
|---|---|
| Breakdown | Subtotals |
| First Floor | |
| 4.0 x 10.0 | 40.0 |
| 24.0 x 24.0 | 576.0 |
| 24.0 x 36.0 | 864.0 |
| Second Floor | |
| 17.0 x 36.0 | 612.0 |
| | |
| 4 Items (Rounded) | 2092 |

Form SKT.BldSkt — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE